This is the case about a car chase in which the driver got out, ran, and wasn't caught. This was a highly contested trial about the identity of that driver, which resulted in the jury declaring itself deadlocked on the second day and after several hours of deliberations. But the trial court made two serious errors. The first, a Jenks error, prevented the defense from adequately confronting a parole officer's highly inflammatory testimony with her prior reports. The second was a due process error, where the court allowed the prosecution to impeach Mr. Bailey with several prior convictions, many of them for distribution of marijuana, conduct identical to that which the driver of the car was engaged in that day. Could I talk a little bit about the second issue? It seems to me that the trial judge did very little wrong. From the way I read the record, Mr. Bailey induced or incentivized his witness to make a hearsay statement that introduced hearsay from Mr. Bailey, which was exculpatory. In general, those self-serving statements should not come in, and the United States quite properly could have objected and kept it out, but the judge let it in for rule of completeness. Bailey wanted the exculpatory information, so why couldn't he then be impeached with these prior convictions, which are clearly admissible as a means to attack credibility? The government had a choice to make. It could have brought in all of Mr. Bailey's conversations with Waikita Smith, the witness, or none of it, but under the rules of evidence, they can't cherry pick. The prosecution tried to manipulate the system by only putting in the part it liked, and the court quite properly ruled that under the rule of completeness, the jury, in fairness, should hear the rest of the conversation, including the part that the defense was forced to introduce. Yeah, but the problem is that's a risk-reward situation. You put that in, and then under the rules, right, the government's allowed to treat that hearsay declarant as a witness and attack that testimony in any way that it would as if the witness had taken the stand, right? I disagree, Your Honor. The government set up this situation artificially by only putting in the part of the statement it liked. If you approve this stratagem by the government, where are you going to draw the line? How bad does the prosecution's selective redaction have to get before it does become a due process violation? Let me give you a hypothetical. What if after arrest, in a post-arrest interrogation, a defendant said, you know, the word on the street is that I'm the one who killed her, but that's not true. And at trial, the prosecution puts up the agent to say, the defendant said, I'm the one who killed her. Clearly, that's a gross misrepresentation of what the defendant said with the full context of the rest of his statement. They're cherry picking part of it that they like. Then the trial judge admits on the defendant's motion the rest of the statement, and as Judge Pryor pointed out, it would be entirely proper at that point for the government to attack the credibility of the statement because it was exculpatory. But not by impeaching the defendant as a declarant when only because the government forced the defendant. Who's the declarant? The defendant. Well, then who else do they attack? The government has a choice at the beginning, as I said, to put in the entirety of the statement because the court ruled here that it was under the rule of completeness the rest should come in. And under Rule 106 and correspondingly in the common law version, it applies to oral statements. That means the trial court said, in fairness, the jury ought to hear the rest of this. That means that the prosecution left out part of the statement that the trial court thought the jury ought to hear. If that deliberate stratagem can be rewarded by allowing impeachment, which otherwise would not be allowed to occur, that's a due process violation. And right here is the place to draw the line because on the application of the rule of completeness, it's clear that the court is saying, in fairness, they ought to hear the rest of the statement or any other statement. Do you admit that the rule says – if we just read the plain text of the rule, it allowed the district court to do what it did. It seems to me your argument is, well, that as applied basically, that's a violation of due process, that it's a constitutional error. Correct. Because otherwise the prosecution could mince any part of a defendant's statement and force the defendant into an unfair choice. It has an effect to rewrite the rule to comply with the Constitution. No, Your Honor. There's always a question. If we write an opinion that does that, if we write an opinion which says the judge applied the rule, that's a violation of the Constitution. That's henceforth the way the rule has to be applied. There are a lot of authorities the court has to apply, and there's an order of hierarchy, and the Constitution obviously comes first. This was a due process violation, and therefore the court can see that this application of those rules in a technical manner resulted in a violation of Mr. Bailey's rights to due process in a fair trial. And that doesn't – there are many times when there are conflicts between different authorities. That doesn't violate any principle of interpretation for this court. Just one last thing on that before you start again. The government seems to argue that by making an objection under 806 and 404B but failing to reference 609, if I read their argument properly, you're precluded from attacking the district court's evidentiary ruling on the basis of 609A. Yes, Your Honor. That's an incorrect argument. I objected this was improper impeachment, as you noted. Just because I didn't say the magic word 609 doesn't mean that the court and the prosecution weren't well on notice of what the issue here was and what test had to be properly applied to rule on it. The only type of impeachment at issue was impeachment with prior convictions. The government in pretrial briefing had also raised the issue of 609. So everyone was on notice, and the defendant objected to improper impeachment. It's not the law that the defense has to spell out every detail of the test the trial court is then required to apply. I tend to agree, but let me ask you this question. Is it our job up here in Atlanta to do the balancing under 609 de novo? Or should we read the record to similarly understand that the district judge did the balancing even though he didn't cite the rule? Or what should we be doing? What standard should we be employing to resolve that issue? The court should find that it was abuse of discretion not to apply the mandatory balancing test at all, and the court need look no further. If the court somehow decided to look past that. That's plain error to do that. It's an abuse of discretion as well. I understand that, but abuse of discretion occurs when they misapply the law. So he misapplied 609. Yes, Your Honor. By not invoking it on the record himself. By not, yes, by not putting this. Not showing us that he used 609 analysis. Yes, according to press. And that constitutes abuse of discretion. Yes, it does, Your Honor. This court has said it's mandatory, not discretionary. I understand. Even if it were examined under a plain error standard, though, Judge Choflat, this error was clear because he didn't do any analysis on the record. It was also plain because the law says it's mandatory, and it affected Mr. Bailey's substantial rights because he was impeached with multiple prior convictions, several of them for conduct. His credibility, as I read this record, was in this case from the beginning to the end, that little seeds were planted throughout all of the government witnesses to show that Reggie or somebody else drove this car. Reggie was the one. Just little bits and bits and bits and bits and pieces. Then we got to the interview with the detective, the ATF agent. None of that evidence about the many other people who could have been driving the car depended on statements from the defendant. Oh, I understand that. I'm just making the observation that somebody else did it. Absolutely. It's seeded throughout the course of the trial. Absolutely. It came to fruition with the interrogation of the ATF agent. Yes, Your Honor, and that's one of the many reasons why the government hasn't proved that these errors were harmless beyond a reasonable doubt because there was such a lot of evidence that someone else could have been driving the car on the day in question. The government's case had significant issues. An important piece of prosecution evidence was the eyewitness testimony of Officer Parker, but his credibility and reliability were undercut. He only got two fleeting glances at the driver, one of them from over 400 feet away through a rain-streaked windshield. He only looked at Mr. Bailey's photo identification card found in his wallet in the car and never did a photo or actual lineup to see if he really could identify Mr. Bailey. And Parker significantly exaggerated how close he was and also changed the description of the suspect. This is your jinxed argument, right? I think this issue, the weakness of the prosecution's case, goes to why they haven't shown harmless error as to either of these problems. That's what I was going to ask you. I mean, you may have a good argument, but isn't the error, if any, harmless here? Not at all because one indication of how close this case was is, as I said, after several hours, the jury deadlocked. And part of the reason I suspect they did that is not only was the eyewitness identification weak, but there was no forensic evidence from the government. Fingerprints found in the car on plastic bags were found not to come from Mr. Bailey but from other people. And the defense put up evidence that a Reginald Boyce and many other people could have been driving the car on that day. The government's case had significant problems. I have a question going back to the plain error issue with regard to Rule 609A. I know that in Preston, our predecessor circuit said that the district court has to make an on-the-record finding. But since then, the Fifth Circuit—this is since the split, so this is only persuasive authority. The new Fifth, we'll call it, has interpreted Preston as requiring that on-the-record finding as only something the district court has to do when requested by a party. That's what they said in United States v. Robinson in 1983. They have adhered to that interpretation. Some other circuits have done that as well. Have we weighed in on that one way or another? I do not believe so, Your Honor. Okay. And I think here, while I did not explicitly say 609, I put the court on notice of the issue because impeachment with priors was at issue and I objected this was improper impeachment. Yeah, but the objection was a due process objection, wasn't it? Yes, it was, Your Honor, and under 806.  Thank you. Ms. Merkel. May it please the Court? I'm Assistant United States Attorney Suzette Smikle, and it is my privilege to represent the United States of America. You tried the case. I'm sorry? You tried the case, didn't you? I did, Your Honor, yes. And with regard to the issue that we just finished talking about, with regard to the prior convictions, I think it's first important to point out that this was not a case regarding setting up the defendant to put these statements in or cherry-picking. This was a completely different statement. Even the defendant admits in his brief that this statement was made on the next day in a different conversation under different circumstances, which is why the government objected to it coming in as self-serving hearsay statements. In fact, we vigorously objected in our brief and at a hearing, so this was not a situation where the government set the defendant up in order to then turn around and impeach him. Your position was before and is now that the rule of completeness, in fact, did not require the admission of this statement. That is correct. But even if that was a correct ruling, that the rule of completeness did require it, the law is clear that the government is permitted to impeach the defendant when he brings in this self-serving hearsay statement. There's no rule or case law that says if a statement comes in under the rule of completeness, then it's therefore immune from impeachment. There's nothing that says that in any of the cases cited by the defendant, and I have done thorough research to see if there's anything out there in any other circuits that say if a hearsay statement is brought in by the defendant, that it cannot be impeached by the government. The court properly allowed the government to impeach pursuant to Rules 806 and 609, as well as clear precedent in this circuit. It's just hard for me to see just how harmful to the admission of the convictions was for a lot of reasons. First, it seems to me the jury learned from the testimony, is it of Waiketa? Waiketa Smith, yeah. Waiketa Smith and Anthony Bailey. But Bailey had for years been engaged in marijuana trafficking, right? Yes. And that he had possessed firearms on multiple occasions while he was a felon. They already knew that from that. Second, there was evidence tying Bailey to the Corolla and to the firearm that was really overwhelming. Third, the district court had a cautionary instruction, right? Yes, Your Honor. The prior convictions were not similar to the charged offense. That's correct. And he had already stipulated to being a felon, so the jury knew that, right? That's correct. Yes, Your Honor. So essentially, the defendant was charged with being a felon in possession of a firearm. So the jury knew that he had been previously convicted. So when they heard about this 2011 conviction, they could have easily assumed that that's the conviction for which he was a convicted felon. In fact, the defendant in the indictment, the indictment listed seven prior felony convictions. We redacted that and only impeached him with one of the felony convictions listed on the indictment and then the other felony conviction that came after the— Something just struck me, which is that you are here and now performing the 609 balancing analysis that Preston requires and the judge didn't do in the district court. Yes, that's right. And then we ought to remand to him so he can do this. I don't think it's necessary to remand in this case based on the overwhelming evidence of guilt. I think because the defendant did not object on this ground, he did not alert the court to the fact that there should be this balancing test. And I understand that the case law talks about this being a mandatory test, but there was no specific objection on that ground. Therefore, the district court did not conduct that test. We acknowledge that. However, even if the court had conducted that test based on the overwhelming evidence, based on what Judge Pryor just outlined, the ruling would have been that the probative value outweighed the prejudicial effect. But even if it didn't— We have to do that balancing anyway because to review— well, at least we potentially have to do it to consider his due process argument, don't we? Potentially. And if we do it, it weighs in favor. We could say, look, the rule is the rule. There's nothing unconstitutional about it. That would be the end of the story. But even if we gave them the benefit of the doubt that applying the rule in this circumstance might in some case violate the Constitution, we'd have to consider all those factors, wouldn't we? Yes, Your Honor, and if you do consider them, they weigh in favor of probativeness. But even if it tilts in favor of the defendant, even if the court were to find that the prejudicial value outweighed the probative value, even under those circumstances, there was no abuse of discretion here because any error was harmless, based on the overwhelming evidence of guilt. And I think it's important to point out that in this argument, the defendant, even though he, in laying out the facts, tries to indicate that the evidence wasn't that strong, in this argument, the defendant points out all the strengths of the government's case and states that because the government's case was so strong, it wasn't really necessary to impeach him. So your point is then that we'd have to consider all those factors, even if we thought that there was a potentially constitutional error and a plain error under 609. Well, not a plain error. We would say that it's harmless beyond a – we would have to consider whether this was harmless beyond a reasonable doubt anyway. Yes, based on the abuse of discretion standard, as well as the plain error standard, either one, whether it's under abuse of discretion, you can consider it harmless error, and under plain error, there was no infringement on the defendant's substantial rights because there was no miscarriage of justice here. There was no prejudice to the defendant. The evidence was quite straightforward under the circumstances and pretty overwhelming. The police officer saw the defendant driving the car. They locked eyes, in fact, in which the police officer saw his eyes popped in an, oh, no, I've noticed you and you've noticed me. And then in this chase, when the defendant got out and started running, the police officer was driving toward him and saw him, then found his wallet in the car, immediately noticed that the person pictured on the ID in the wallet is the same person he just locked eyes with. And we have his girlfriend testifying that the defendant called her in the hospital and told her, I wrecked the car. Now, of course, after he had some time to think about it, after he slept on it, after he realized he'd essentially just admitted what he had done, then he calls her and tells her, oh, well, I'd loaned it to someone else. But even under those circumstances, he said, here are the details of what happened. The person I loaned it to jumped out of the car and ran from the police. Essentially, Your Honor, but that is what harmless error is. If you look at the overwhelming evidence of guilt, even if there was error in not conducting the test, even if the court were to find that the prejudicial value outweighed the probative effect, even under those circumstances, the guilt was so overwhelming, it was harmless. But I think because of what we outlined in our brief, the prejudicial effect here was mitigated. The court, even though it may not have explicitly conducted the balancing test on the record, it had done so in other circumstances throughout this trial with regard to 404B evidence. It discussed that, and it gave limiting instructions under those circumstances. In this case, because we had briefed the issue and had argued the issue, it's very likely that the court didn't feel the need to go into any further discussion and ruled and then gave limiting instruction to the jury when this testimony came in. Without, in most instances, without a request from the defense. Exactly. If I read the record, the court just did it on its own initiative. Yes. By and large. Yes. With no request, no objection first and no request. Right. The court gave limiting instructions, and again, we had alerted the defendant to this issue when we filed a motion in limine. The defendant could have at that time either filed a written response pointing out that there was issues with the balancing test at the oral argument in which we argued regarding this issue. At that time, the defendant could have pointed out that there were problems with probative value and prejudicial effect, and then when we actually presented the witness, the defendant at that time could have argued that there were issues with regard to the balancing test. So there were multiple opportunities for the defendant in this case to raise this issue, and he did not. But what the court did is it had the briefing, it had the arguments of counsel, he knew that this issue was coming up, and it ensured that any prejudice would be mitigated by giving this limiting instruction. Am I right that the other circuits, including the New Fifth, have interpreted the rule as requiring that on-the-record determination of balancing only if there's been a specific objection? The case that you pointed out, the Robinson case, I've actually not seen that specific case, Your Honor, but what I have seen, the cases that we have here in the Eleventh Circuit, the Preston case, for example, talks about this on-the-record finding. But what I've seen in other cases, in terms of the plain error standard, is that you need to make a specific objection to the court so that the court has an opportunity to correct any error. If you stay silent on an issue, then when it's time for appeal, the appellate court is dealing with it without having the benefit of understanding where the district court would have ruled and how it would have come out on that issue. So based on that, under those circumstances, I think it makes sense that the Fifth Circuit would have now come out in this Robinson case that you've talked about, indicating that, yes, there should be a clear objection to give the district court the opportunity to make a ruling, especially under these circumstances where we had other issues come up with regard to 4.4b, and the court made a ruling in those circumstances, and the defendant had an opportunity to do just that with regard to this. How did the district judge know that you complied with your Jenks Act obligations in providing summaries to the defendant when he didn't look at the summaries or otherwise inspect or analyze them? Right. Well, the district court took, obviously, I proffered to the court the circumstances of what happened and that the agency had not given us authority to turn over these notes, and this was a very difficult position for the government to be in, in that the agency was telling the government, you cannot disclose these. There are all these procedures that need to be followed and so forth. So what the government did was, okay, we're going to take all the information that you have provided, that you say we can turn over the information, just not the raw notes themselves, and we're going to put that in a report, and we're going to type that up and turn that over. In addition, I do… Was the defense objection at trial that the judge didn't look at the summaries and compare them with the notes, or was it that the summaries are insufficient?  The defendants actually never asked the court to do an in-camera review, which is why we argue that that's a plain error standard. He never said, take a look at this report, read it, and compare it to the testimony. He never said, order the government to turn over these notes so that you can do an in-camera review. None of that happened. But we turned over not only the report itself, which was a summary of what we had been told from the supervisor, we also turned over, in discovery, all of the other underlying documents that the witness testified about. She testified about this police report that the brother had provided, about the defendant allegedly shooting their father. All of that information was actually turned over to the defendant months before trial. The government itself had never been given those case notes either. Eventually, at the time, initially we were not. Eventually we were sent it, but it was not essentially authorized for us to receive that. And once that happened, the agency contacted us and said, you cannot turn these over. When we first found out about the notes and when we wrote the report, we did not have them, which is what we conveyed to the court. Someone in the agency, after we issued a subpoena, actually, saying we need these notes, and so they said, you can't get them, then we subpoenaed the agency, and they said, you still can't get them. Someone else sent them to us, believing that we were able to get them pursuant to the subpoena. The agency contacted us and said, no, you cannot. And that is why we explained to the court, we are not in a position, based on what we are being told from the agencies, to turn this information over. But what I ensured, and we acted in good faith, in fact, we turned over this information before the testimony, which we're not required to do. So in good faith, we said, let's make sure we type up this information that we've received. Let's turn that all over in a written statement. Let's make sure all of the underlying police reports that the witness testified about has been disclosed. They had been disclosed in January of that year, and the trial was in July. So the defendant had months. So the defendant had everything he needed in order to adequately cross-examine this witness. And that is why the court did not abuse its discretion in saying that the government had complied with its Jenks Act obligations, because the point of the Jenks Act is to give the defendant the opportunity to properly cross-examine the witness. And in this case, the defendant had everything that he needed to adequately cross-examine the witness, and he chose not to do so. And based on that, Your Honor, there was no abuse of discussion. There was no violation of the Jenks Act. And the court properly ruled at the trial that that was so. If the court has no further questions, we will rest on our briefs. Thank you. Mr. Garrett. Let me start by responding to some of these points on the Jenks error. It is simply wrong that the defense had the relevant details. And these are not notes. These are reports that the witness wrote about the very interactions she testified to. And the government had those and refused to turn them over and knew in advance that it was not going to turn them over and comply with Jenks and nevertheless called the witness and let her testify on direct. How would it have made a difference? We don't know. The government's burden here is to prove beyond a reasonable doubt that it wouldn't have made a difference. And they haven't done that, and they've precluded this court from reviewing the reports by never submitting them into the record and never moving. They've got overwhelming evidence that he was guilty. It's hard to see in the light of that how they can't satisfy that standard. I respectfully disagree with the characterization of their case. But in any case, in the original Jenks case, the Supreme Court didn't have the reports and simply reversed, not remanded, not evaluated, just reversed because it is such a low bar for those reports to likely be useful for the defense on cross-examination. The court said the omission from the reports of facts related at the trial were a contrast and emphasis upon the same facts. Even a different order of treatment are also relevant to the cross-examining process. So really, unless Vidal, that's the parole officer we're talking about, unless Vidal's testimony was a verbatim recitation of her reports, which were not given, there was going to be good fodder for cross-examination. And in the same situation in Jenks, the Supreme Court simply reversed because we don't have to prove there's contradiction. That's the whole point of the Jenks Act. The defense should have the opportunity to see those reports and decide what is useful and how to use it. Excuse me. Responding to a couple points on the improper impeachment, the government at trial in here has made a lot of the fact that Mr. Bailey's additional statement that we brought in occurred on a different day. That doesn't make the trial court's ruling under the rule of completeness incorrect. Rule 106 says the court can let in any other part or any other writing or recorded statement. It doesn't have to be the same day, the same location, even necessarily by the same person. It gives the trial court great discretion. And here the court exercised that to let in another part of his statement. And that was the right thing to do here because of the contradictions in Waikita Smith's testimony on direct. She was asked by the prosecution twice what Mr. Bailey said about the car wreck, and she answered twice that the car was wrecked. That's what he said. And the prosecution asked— I understood the government's argument. The government's argument was this was nothing like the cherry-picking hypothetical that you had posed to us in your opening argument. They're saying it's not that bad, but my point is— No, they're saying it's really completely different from that. This was something said on a completely different day in a different context. They knew it was related because that's why they filed a pretrial motion trying to exclude it. They knew it was an issue, and it was closely tied to the same subject matter. And the trial court, who has the discretion and has the grounds I view, disagreed and thought it should come in. And I think that is the most clear indication that this was related and it was a strategic decision by the prosecution to leave out this crucial part of his statement, which added proper context to Waikita Smith's self-contradictory and ambiguous testimony as to what he had said. Thank you. Thank you. We'll go to the next case. Finnegan v. Commissioner.